Form 240A - Reaffirmation Agreement (1/07)

☐ **Presumption of Undue Hardship**
☒ **No Presumption of Undue Hardship**
(Check box as directed in Part D: Debtor's Statement in Support of Reaffirmation Agreement.)

# UNITED STATES BANKRUPTCY COURT
## District of IOWA CEDAR RAPIDS

In re <u>SUE A BIDDLE</u>,            Case No. <u>0903004PJK</u>
    Debtor                                      Chapter <u>7</u>

## REAFFIRMATION AGREEMENT
*[Indicate all documents included in this filing by checking each applicable box.]*

☒ Part A: Disclosures, Instructions, and    ☐ Part D: Debtor's Statement in
    Notice to Debtor (pages 1 - 5)               Support of Reaffirmation Agreement

☒ Part B: Reaffirmation Agreement           ☐ Part E: Motion for Court Approval

☐ Part C: Certification by Debtor's Attorney

*[Note: Complete Part E only if debtor was not represented by an attorney during the course of negotiating this agreement. Note also: If you complete Part E, you must prepare and file Form 240B - Order on Reaffirmation Agreement.]*

**Name of Creditor:** <u>Wells Fargo Bank, N.A., Wells Fargo Auto Finance</u>

☐ *[Check this box if]* Creditor is a Credit Union as defined in §19(b)(1)(a)(iv) of the Federal Reserve Act

**PART A: DISCLOSURE STATEMENT, INSTRUCTIONS AND NOTICE TO DEBTOR**

1.  **DISCLOSURE STATEMENT**

*Before Agreeing to Reaffirm a Debt, Review These Important Disclosures:*

**SUMMARY OF REAFFIRMATION AGREEMENT**
    This Summary is made pursuant to the requirements of the Bankruptcy Code.

**AMOUNT REAFFIRMED**

    The amount of debt you have agreed to reaffirm:            <u>$6,483.75</u>

*The amount of debt you have agreed to reaffirm includes all fees and costs (if any) that have accrued as of the date of this disclosure. Your credit agreement may obligate you to pay additional amounts which may come due after the date of this disclosure. Consult your credit agreement.*

**Form 240A - Reaffirmation Agreement (Cont.)**  2
**ANNUAL PERCENTAGE RATE**

*[The annual percentage rate can be disclosed in different ways, depending on the type of debt.]*

~~a.  If the debt is an extension of "credit" under an "open-end credit plan," as those terms are defined in § 103 of the Truth-in Lending Act, such as a credit card, the creditor may disclose the annual percentage rate shown in (i) below or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.~~

   ~~(i)  The Annual Percentage Rate disclosed, or that would have been disclosed, to the debtor in the most recent periodic statement prior to entering into the reaffirmation agreement described in Part B below or, if no such periodic statement was given to the debtor during the prior six months, the annual percentage rate as it would have been so disclosed at the time of the disclosure statement: _____%.~~

~~--- And/Or ---~~

   ~~(ii)  The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: _____%.  If different simple interest rates apply to different balances included in the amount reaffirmed, the amount of each balance and the rate applicable to it are:~~

   ~~$_____ @ _____%;~~
   ~~$_____ @ _____%;~~
   ~~$_____ @ _____%.~~

   b.  If the debt is an extension of credit other than under than an open end credit plan, the creditor may disclose the annual percentage rate shown in (I) below, or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

   (i)  The Annual Percentage Rate under §128(a)(4) of the Truth in Lending Act, as disclosed to the debtor in the most recent disclosure statement given to the debtor prior to entering into the reaffirmation agreement with respect to the debt or, if no such disclosure statement was given to the debtor, the annual percentage rate as it would have been so disclosed: <u>14.99%</u>.

--- And/Or ---

   (ii)  The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: <u>8.00%</u>.  If different simple interest rates apply to different balances included in the amount reaffirmed,

Form 240A - Reaffirmation Agreement (Cont.)                                                3

    the amount of each balance and the rate applicable to it are: $ _____ @ _____ %;
$_____ @ _____ %;
$_____ @ _____ %.

    c.  If the underlying debt transaction was disclosed as a variable rate transaction on the most recent disclosure given under the Truth in Lending Act:

    The interest rate on your loan may be a variable interest rate which changes from time to time, so that the annual percentage rate disclosed here may be higher or lower.

    d.  If the reaffirmed debt is secured by a security interest or lien, which has not been waived or determined to be void by a final order of the court, the following items or types of items of the debtor's goods or property remain subject to such security interest or lien in connection with the debt or debts being reaffirmed in the reaffirmation agreement described in Part B.

| Item or Type of Item | Original Purchase Price or Original Amount of Loan |
|---|---|
| 04  CHEVROLE  CAVALIER<br>VIN: 1G1JH12F447124637 | $11,275.00 |

*Optional*---*At the election of the creditor, a repayment schedule using one or a combination of the following may be provided:*

**Repayment Schedule:**

~~Your first payment in the amount of _____ is due on _____, but the future payment amount may be different. Consult your reaffirmation agreement or credit agreement, as applicable.~~

—*Or*—

~~Your payment schedule will be: \_\_\_\_\_ (number) payments in the amount of _____ each, payable monthly on the _____ (day) of each _____ (week, month, unless altered later by mutual agreement in writing.)~~

—*Or*—

Your payment schedule will be: _39_ payments in monthly installments of _$190.00_ commencing on _11/09/2009_ and continuing on the same day of each succeeding month.

**Form 240A - Reaffirmation Agreement (Cont.)** 4

## 2. INSTRUCTIONS AND NOTICE TO DEBTOR

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps are not completed, the reaffirmation agreement is not effective, even though you have signed it.

1. Read the disclosures in this Part A carefully. Consider the decision to reaffirm carefully. Then, if you want to reaffirm, sign the reaffirmation agreement in Part B (or you may use a separate agreement you and your creditor agree on).

2. Complete and sign Part D and be sure you can afford to make the payments you are agreeing to make and have received a copy of the disclosure statement and a completed and signed reaffirmation agreement.

3. If you were represented by an attorney during the negotiation of your reaffirmation agreement, the attorney must have signed the certification in Part C.

4. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, you must have completed and signed Part E.

5. The original of this disclosure must be filed with the court by you or your creditor. If a separate reaffirmation agreement (other than the one in Part B) has been signed, it must be attached.

6. <u>If the creditor is not a Credit Union</u> and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court unless the reaffirmation is presumed to be an undue hardship as explained in Part D. <u>If the creditor is a Credit Union</u> and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court.

7. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, it will not be effective unless the court approves it. The court will notify you and the creditor of the hearing on your reaffirmation agreement. You must attend this hearing in bankruptcy court where the judge will review your reaffirmation agreement. The bankruptcy court must approve your reaffirmation agreement as consistent with your best interests, except that no court approval is required if your reaffirmation agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home.

**Form 240A - Reaffirmation Agreement (Cont.)**                                                          5

## YOUR RIGHT TO RESCIND (CANCEL) YOUR REAFFIRMATION AGREEMENT

You may rescind (cancel) your reaffirmation agreement at any time before the bankruptcy court enters a discharge order, or before the expiration of the 60-day period that begins on the date your reaffirmation agreement is filed with the court, whichever occurs later. To rescind (cancel) your reaffirmation agreement, you must notify the creditor that your reaffirmation agreement is rescinded (or canceled).

**Frequently Asked Questions:**

<u>What are your obligations if you reaffirm the debt?</u> A reaffirmed debt remains your personal legal obligation. It is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Otherwise, your obligations will be determined by the reaffirmation agreement which may have changed the terms of the original agreement. For example, if you are reaffirming an open end credit agreement, the creditor may be permitted by that agreement or applicable law to change the terms of that agreement in the future under certain conditions.

<u>Are you required to enter into a reaffirmation agreement by any law?</u> No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments you agree to make.

<u>What if your creditor has a security interest or lien?</u> Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage or security deed. Even if you do not reaffirm and your personal liability on the debt is discharged, because of the lien your creditor may still have the right to take the security property if you do not pay the debt or default on it. If the lien is on an item of personal property that is exempt under your State's law or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the security property, as agreed by the parties or determined by the court.

> **NOTE:** When this disclosure refers to what a creditor "may" do, it does not use the word "may" to give the creditor specific permission. The word "may" is used to tell you what might occur if the law permits the creditor to take the action. If you have questions about your reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement reaffirming a debt. If you don't have an attorney helping you, the judge will explain the effect of your reaffirming a debt when the hearing on the reaffirmation agreement is held.

**Form 240A - Reaffirmation Agreement (Cont.)**                                         6

**PART B: REAFFIRMATION AGREEMENT.**

I (we) agree to reaffirm the debts arising under the credit agreement described below.

1. Brief description of credit agreement:
   Contract Type: Installment Contract; Contract Date: 06/25/2008; Account No.:

   Original Credit Term: 55; Original APR: 14.99%; Original Monthly Payment: $290.08
   Original Amount Financed: $11,275.00

2. Description of any changes to the credit agreement made as part of this reaffirmation agreement:
   **This reaffirmation reduces: the balance from $8,867.04 to $6,483.75, the interest rate from 14.99% to 8.00%, and the monthly payment from $290.08 to $190.00 effective 10/14/2009.**

SIGNATURE(S):

Borrower:

*Susan A. Biddle*
(Print Name)

*Susan A Biddle*
(Signature)

Date: *Nov 4, 2009*

Co-borrower, if also reaffirming these debts:

_____
(Print Name)

_____
(Signature)

Date: _____

Accepted by creditor:

Wells Fargo Bank, N.A. Wells Fargo Auto Finance
(Printed Name of Creditor)

13675 Technology Drive, Bldg. C, 2nd Floor
Eden Prairie, MN 55344-2252
(Address of Creditor)

*Matt*
(Signature)

MATT SIMONSON, Bankruptcy Specialist
(Printed Name and Title of Individual Signing for Creditor)

Date of creditor acceptance:

*11/05/09*

**Form 240A - Reaffirmation Agreement (Cont.)**                                                                 7

## PART C: CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY).

*[To be filed only if the attorney represented the debtor during the course of negotiating this agreement.]*

☒ I hereby certify that (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ *[Check box, if applicable and the creditor is not a Credit Union.]* A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

Printed Name of Debtor's Attorney: Francis Wm. Henkels #2305

Signature of Debtor's Attorney: _____

Date: 11/4/09

**Form 240A - Reaffirmation Agreement (Cont.)**                                    8

## PART D: DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

*[Read and complete sections 1 and 2, **OR**, if the creditor is a Credit Union and the debtor is represented by an attorney, read section 3. Sign the appropriate signature line(s) and date your signature. If you complete sections 1 and 2 and your income less monthly expenses does not leave enough to make the payments under this reaffirmation agreement, check the box at the top of page 1 indicating "Presumption of Undue Hardship." Otherwise, check the box at the top of page 1 indicating "No Presumption of Undue Hardship"]*

1. I believe this reaffirmation agreement will not impose an undue hardship on my dependents or me. I can afford to make the payments on the reaffirmed debt because my monthly income (take home pay plus any other income received) is $2,989.32, and my actual current monthly expenses including monthly payments on post-bankruptcy debt and other reaffirmation agreements total $2,289.32, leaving $700.00 to make the required payments on this reaffirmed debt.

I understand that if my income less my monthly expenses does not leave enough to make the payments, this reaffirmation agreement is presumed to be an undue hardship on me and must be reviewed by the court. However, this presumption may be overcome if I explain to the satisfaction of the court how I can afford to make the payments here: _____

_____.

**(Use an additional page if needed for a full explanation.)**

2. Provide the information requested below and then check one of the applicable paragraphs.

    Schedule I Total Income = _____    Schedule J Total Expenses = _____

    a. ____ There **IS NOT** a difference between the total income and expenses stated in Schedules I and J and the income and expenses stated in Paragraph 1 above.

    b. _X_ There **IS** a difference between the total income and expenses stated in Schedules I and J and the income and expenses stated in Paragraph 1 above. The difference between the income and expenses stated in Schedules I and J and the income and expenses stated in Paragraph 1 above is due to the following: Since the filing of my bankruptcy my monthly expenses have been reduced because of credits included in the bankruptcy.

I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Signed: *Susan A Birdsall*
           (Debtor)

           (Joint Debtor, if any)
Date:  Nov 4, 2009
                                    — Or —

*[If the creditor is a Credit Union and the debtor is represented by an attorney]*

~~3. I believe this reaffirmation agreement is in my financial interest. I can afford to make the payments on the reaffirmed debt. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.~~
~~Signed:_____~~
~~        (Debtor)~~

~~        (Joint Debtor, if any)~~
~~Date:_____~~

**Form 240A - Reaffirmation Agreement (Cont.)**                                9

**PART E: MOTION FOR COURT APPROVAL**
*[To be completed and filed only if the debtor is not represented by an attorney during the course of negotiating this agreement.]*

## MOTION FOR COURT APPROVAL OF REAFFIRMATION AGREEMENT

I (we), the debtor(s), affirm the following to be true and correct:

I am not represented by an attorney in connection with this reaffirmation agreement.

I believe this reaffirmation agreement is in my best interest based on the income and expenses I have disclosed in my Statement in Support of this reaffirmation agreement, and because (provide any additional relevant reasons the court should consider):

Therefore, I ask the court for an order approving this reaffirmation agreement under the following provisions (*check all applicable boxes*):

☐ 11 U.S.C. § 524(c)(6) (debtor is not represented by an attorney during the course of the negotiation of the reaffirmation agreement)

☐ 11 U.S.C. § 524(m) (presumption of undue hardship has arisen because monthly expenses exceed monthly income)

Signed: _____
        (Debtor)

        _____
        (Joint Debtor, if any)

Date: _____

## NOTE AND SECURITY AGREEMENT

**IDENTIFICATION OF PARTIES.** In this Note and Security Agreement ("Agreement" or "Loan Agreement"), the words "you" and "your" mean each Borrower who signs this Agreement; the words "we," "us," and "our" mean the Lender and its successors and assigns; and the word "Owner" means someone other than a Borrower who has an ownership interest in the Collateral (defined on page 2) and signs the Third Party Collateral Agreement on page 3.

YOUR ACCOUNT IS PAYABLE TO THE LENDER SHOWN BELOW:

Wells Fargo Bank, N.A.
806 WACKER DRIVE
STE 122
DUBUQUE            IA      520025200

# ORIGINAL

| Date of Loan | 06/25/2008 | | Account Number | | |
|---|---|---|---|---|---|
| Borrower (Name and Address) | Borrower (Name and Address) | | Borrower (Name and Address) | | Borrower (Name and Address) |
| SUSAN A BIDDLE 9079 N BADGER RD EAST DUBUQUE    IL    61025 | | | | | |

**YOUR PROMISE TO PAY AND THE TERMS OF REPAYMENT.** To repay your loan, you promise to pay us the Principal Amount of Loan together with interest at the Rate of Interest Per Year both as shown in the Other Transaction Information Disclosure on page 2. You will pay this sum to us in lawful money of the United States at the payment address shown on your billing statement (or such other location specified by us from time to time) in installments each month according to the Payment Schedule shown on page 2. Payments received at a location other than the payment address on your billing statement may have a delay in processing. You may prepay your loan at any time prior to maturity without penalty. If you make a partial prepayment, there will not be any change in the amount of your monthly payment or delays in due date of those payments unless we have agreed to such changes in writing. Any Loan Origination Fee as shown on Page 2 is withheld from the proceeds of your loan, is fully earned on the date of your loan and is not subject to refund.

The proceeds of this Note will be disbursed on 06/25/2008, unless we receive your signed Note after that date. If we receive your signed Note after that date, we will promptly disburse the Note proceeds on that day upon our acceptance of the Note, and we will notify you of the disbursement date. Monthly payments in the amount described in the Truth In Lending Disclosure Statement on page 2 are due beginning on the date specified on page 2 or on such other later date specified in our notice to you and on the same day of each month after that until paid.

**INTEREST-BEARING LOAN.** This is an interest-bearing loan. Except as limited by law, the interest on your loan is calculated each day based upon the unpaid balance of the Principal Amount of Loan outstanding from time to time, using the Rate of Interest Per Year shown on page 2 until paid in full. Interest accrues on the basis of actual days elapsed and a year of 365 days (366 days in a leap year). Payments will be applied to amounts you owe in the order we choose, which may vary from time to time without notice to you. Accruing interest every day will affect the total amount of interest you pay under this Agreement and the corresponding Finance Charge – your Finance Charge will be less if you pay early and more if you pay late. Any necessary adjustments to the Total of Payments will be added to or reduced from your final payment amount.

---

**NOTICE TO CONSUMER: THIS IS A CONSUMER CREDIT TRANSACTION, CONSUMER PAPER, CONSUMER NOTE**

You understand that:
- You should not sign this Agreement before you read the writing on all pages, even if otherwise advised.
- You should not sign this if it contains any blank spaces.
- You are entitled to an exact copy of this and any other agreement that you sign.
- This Agreement is the entire agreement between you and us relating to this account. Any change in this Agreement must be in writing and signed by both you and us.
- You may prepay the unpaid balance at any time without penalty; and
- SUBJECT TO APPLICABLE STATE LAW, THE MOTOR VEHICLE IN THIS TRANSACTION MAY BE SUBJECT TO REPOSSESSION WITHOUT PRIOR NOTICE TO YOU. IF IT IS REPOSSESSED AND SOLD TO SOMEONE ELSE, AND ALL AMOUNTS DUE TO US ARE NOT RECEIVED IN THAT SALE, YOU MAY HAVE TO PAY THE DIFFERENCE.

---

**SIGNATURES.** If you agree to be bound by all of the terms of this Agreement, please sign your name(s) below. All persons signing this Agreement will be fully responsible for payment in full. By signing below, you are authorizing disbursement of the loan proceeds as shown in the "Itemization of Amount Financed" box on Page 2. **You acknowledge receiving a completely filled-in Agreement.**

**BY SIGNING BELOW, YOU AGREE THAT YOU HAVE READ AND UNDERSTOOD ALL OF THE TERMS OF THIS AGREEMENT, INCLUDING THE TRUTH IN LENDING DISCLOSURE ON PAGE 2, THE ARBITRATION AGREEMENT ON PAGE 5 AND ALL OF THE TERMS ON PAGES 1 THROUGH 6 OF THIS AGREEMENT.**

→ *[signature: Susan Biddle]*     SIGN HERE    →    SIGN HERE
→                                 SIGN HERE    →    SIGN HERE

Page 1 of 6                App I.D.    63081621056                NA-7841-0408

**ADDITIONAL TERMS**

**FEDERAL TRUTH IN LENDING DISCLOSURE**

| ANNUAL PERCENTAGE RATE: the cost of your credit as a yearly rate. | FINANCE CHARGE: the dollar amount the credit will cost you. | Amount Financed: the amount of credit provided to you or on your behalf. | Total of Payments: the amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 14.99% | $ 4389.32 | $ 11275.00 | $ 15664.32 |

Your Payment Schedule Will Be As Follows:

| Number of Payments | Amount of Payments | Payments are Due Monthly beginning: 08/09/2008 and on the same day each month thereafter. | Final Payment Due: 01/09/2013 |
|---|---|---|---|
| 54 | $ 290.08 | | |

**Late Charge:** If any part of a payment is more than 10 days late, you will be charged a late charge equal to $39.00.

**Prepayment:** If you pay off this loan early, you will: (a) not have to pay a prepayment penalty, and (b) not be entitled to a refund of any part of the Loan Origination Fee, if any.

**Security:** You are giving us a security interest in the motor vehicle described on Page 2 of this Agreement.

☐ Other Property: _____

**Additional Information:** You can see the rest of this Agreement for more information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

**ITEMIZATION OF AMOUNT FINANCED**

| $ | 11275.00 | Amount Financed (Sum of amounts shown below) |
| $ | 0.00 | Amount Paid on Your Accounts |
| $ | 0.00 | NA |
| $ | 0.00 | NA |
| $ | 1452.00 | Amount Paid to You Directly |

AMOUNTS PAID TO OTHERS ON YOUR BEHALF
| $ | 25.00 | To Public Official for Recording Fees |
| $ | 491.00 | To Washmtl/Prov |
| $ | 475.00 | To Gomb/JCP |
| $ | 3900.00 | To Chase |
| $ | 550.00 | To Kohls/Chase |
| $ | 3922.00 | To Citifinancial |
| $ | 460.00 | To Chase |

☐ When this box is checked, itemization is continued on attached addendum.
*We may be retaining a portion of this amount.

**Other Transaction Information:**

| $ | 11275.00 | Principal Amount of Loan (the Amount Financed plus any Loan Origination Fee) |
| | 14.99% | Rate of Interest Per Year |
| | N/A | Loan Origination Fee |

**YOU GRANT US A SECURITY INTEREST.** You give us a security interest in your property described below. This property is called "Collateral." You also give us a security interest in any accessions to and proceeds of the Collateral. Accessions are goods installed in or attached to the Collateral. Proceeds are money or property due to you from the loss, destruction or sale of the Collateral. You also give us a security interest in all Proceeds or refunds related to any insurance or service contract we finance for you. The purpose of this security interest is to protect us if you don't repay your loan, including any refinance, extension, or renewal of your loan, or if you break any promise made in this Agreement.

**THE SECTION BELOW DESCRIBES THE COLLATERAL COVERED BY THIS AGREEMENT:**

☒ Motor vehicle(s) described as follows:

| Year | Make | Model | Serial Number |
|---|---|---|---|
| 2004 | CHEV | CAVALIER | 1G1JH12F447124637 |

You agree to sign or deliver any documents to us or do any other thing reasonably necessary for us to perfect or defend a first priority security interest in the Collateral. You also agree that any expense we incur perfecting or defending our security interest or obtaining any required documents shall, to the extent not covered by the proceeds of this Agreement, be immediately due and payable or, at our option, may be added to the amount due under this Agreement.

**CREDIT INFORMATION.** We may reexamine and reevaluate your creditworthiness at any time. To do so we may ask you for additional information, obtain your credit bureau report, contact your employer or otherwise verify your current credit standing. You agree to submit current financial information to us if we request it.

**WAIVER AND DELAY IN ENFORCEMENT.** No failure or delay to exercise any right or remedy under this Agreement shall be a waiver of our right to exercise such right or remedy in the future. We do not have to give you notice of any waiver, delay or release. Unless applicable law provides otherwise, we may use our other legal remedies against you before we take possession of any Collateral. You will not be released from your obligations under this loan if we exchange or release any Collateral.

**LATE CHARGE.** If any part of a payment is more than 10 days late, you will be charged a late charge equal to $39.00. No late charge will be assessed for a payment if a delinquency is caused only by previously incurred late charges that have not been paid and you have otherwise made a timely monthly payment of the principal, interest and all other charges currently due. Notwithstanding this, however, we may continue to report your account to credit reporting agencies as past due until such time as your payment of all amounts owed (including late charges, CPI [defined on page 4] premiums and other charges) is current.

**RETURNED PAYMENTS.** If a payment on this loan is made with a check, draft, electronic debit or any similar paper or electronic transaction that is dishonored for any reason (except an error by us), you agree to pay us $39.

Loan No:                    Loan Date: 06/25/2008

**ADDITIONAL TERMS, Continued**

**THIRD PARTY COLLATERAL AGREEMENT**

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Owner hereby grants us a security interest in the Collateral to secure your performance under the Loan Agreement. Owner acknowledges that it has the same obligations and makes the same representations under the Loan Agreement as you with respect to the Collateral. For example, Owner has the duty to keep the Collateral insured, to provide us with evidence of insurance upon request, and to cause us to be named a loss payee on Owner's insurance policy. Also, Owner represents that Owner owns the Collateral or a part of it and that no one else, other than you, has any interest in or claim against the Collateral that has not been disclosed to us in writing. Owner assumes no personal responsibility for the payment of any amounts owed under the Loan Agreement. Owner agrees that we may, without releasing Owner from this Third Party Collateral Agreement and without notice or consent from Owner, extend additional credit to you or enter into an agreement with you to modify, extend, or waive the terms of the Loan Agreement.

| Owner Name and Address | | Owner Name and Address | |
|---|---|---|---|
| N/A | | N/A | |
| N/A | SIGN HERE | N/A | SIGN HERE |

**DEFAULT.** Subject to limitations under state or federal law, you will be in Default on this Agreement ("Default") if:
1. You don't pay the full amount of a required payment when due;
2. You break any promise or condition in this Agreement or in any security instrument that secures the payment of this Agreement;
3. You provide us with false, misleading or materially incomplete information in connection with your loan application or on any document provided to us;
4. An Owner breaks a promise or condition of the Third Party Collateral Agreement; or
5. Any other event occurs that in our judgment significantly decreases the likelihood of your performance or reduces our ability to benefit from the Collateral.

**Idaho, Iowa, Kansas, Maine, Massachusetts, Missouri, Nebraska and South Carolina Residents:** If you reside in Idaho, Iowa, Kansas, Maine, Massachusetts, Missouri, Nebraska or South Carolina at the time we enforce this agreement, the following events of default apply (instead of those described in 1-5 above):
1. You fail to make any monthly payment within 10 days after its due date; or
2. You fail to observe any other provision of this Agreement, which significantly impairs your prospect to pay amounts due under this Agreement or reduces our ability to benefit from the Collateral. We will bear the burden of proving significant impairment.

**Wisconsin Residents:** If you reside in Wisconsin at the time we enforce this agreement, the following events of default apply (instead of those described in 1-5 above):
1. You permit to be outstanding an amount exceeding one full payment that has remained unpaid for more than 10 days after its scheduled or deferred due date or you have not paid your first payment or your last payment within 40 days of its scheduled or deferred due date; or
2. You fail to observe any other covenant of this Agreement, breach of which materially impairs the condition, value or protection of our right to the Collateral or your ability to pay amounts due under this Agreement.

**REMEDIES FOR DEFAULT.** If you are in Default, you agree that subject to limitations and notice requirements under applicable law and without first giving you notice we can: a) require you to pay the remaining balance of this Agreement in full immediately; b) use any remedies available to us by law or this Agreement; c) make a claim for any insurance benefits or premium refunds that may be available as a result of your Default; or d) without first obtaining court approval, take possession of the Collateral wherever it may be found. We may keep the Collateral in full satisfaction of what you owe or sell the Collateral in a commercially reasonable manner. The money that we get from the sale (after paying our costs, including reasonable costs of repair) will reduce the amount you owe. If we get less money than you owe, you will still owe us the difference, unless limited by law. If we get more money than you owe, you will get the extra money, unless we must pay it to someone else, such as a junior lienholder.

**COLLECTION COSTS AND ATTORNEYS' FEES.** You will pay our collection costs, attorneys' fees and other expenses of enforcing our rights under this Agreement. This includes, subject to any limits or prohibitions under applicable law, our reasonable attorneys' fees and expenses if we refer the matter to an attorney, whether or not such attorney is an employee of ours, and whether or not there is a lawsuit or arbitration, including without limitation, all reasonable attorneys' fees and legal expenses for appeals, anticipated post-judgment collection services and bankruptcy proceedings (such as case monitoring, proof of claim and efforts to modify or vacate any alternative stay) plus any court costs and other sums provided by law.

**OPTIONAL ACH AUTHORIZATION.** ☐ If checked, you will provide us with a voided check, and your signature on this agreement authorizes us, our successors and assigns, to take each payment due and any late charge or past due amount then owing under this agreement from your account number located at . This authorization will remain effective until all amounts due under this agreement are paid in full, we notify you of the revocation or you notify us that you wish to revoke your authorization and we are given a reasonable opportunity to act on your request. You may revoke your authorization by sending a written notice to Wells Fargo Auto Finance, P.O. Box 29704, Phoenix, AZ 85038-8988, or by calling us at 1-800-55WELLS (1-800-559-3557).

**RESEARCH/INVESTIGATION FEE AND PHOTOCOPY/FACSIMILE FEE.** In the event that you request or authorize a request to investigate your account or provide copies of account documents for any purpose, you will be charged a reasonable fee, unless prohibited by law, for these services.

**ACCORD AND SATISFACTION AND IRREGULAR PAYMENTS.** We may accept late payments, partial payments, post-dated checks, or any form of payment containing a restrictive endorsement, without losing any of our rights under this Agreement. Our acceptance of checks or money orders labeled "payment in full", or words to that effect will not constitute an accord and satisfaction nor a waiver of any rights we have to receive full payment. If you intend to pay your loan in full with an amount less than the total balance we determine is owing on your loan, payment must be sent to Wells Fargo Auto Finance, P.O. Box 29715, Phoenix, AZ 85038-9715, Attn: Payoff Exceptions and not to the payment address indicated on your statement or payment voucher. Please note that such payments will not discharge your full debt if sent to the statement or voucher address and will do so if sent to our accord and satisfaction address only if we agree to accept your payment as such.

**PURPOSE OF LOAN.** You agree that this loan was obtained primarily for personal, family or household purposes.

**TELEPHONE MONITORING AND CALLING.** From time to time you agree we may monitor and record telephone calls regarding your account to assure the quality of our service. In order for us to service the account or to collect any amounts you owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provde to us in connection with your account, including a mobile telephone number that could result in charges to you.

Loan No:                                    Loan Date: 06/25/2008

JUN. 26. 2008  2:04AM     WELLS FARGO FINANCIAL5635837824                    NO. 8326    P. 4

**ADDITIONAL TERMS, Continued**

**POWER OF ATTORNEY.** You appoint us, through our officers, employees and agents, as your true attorney-in-fact to perform any of the following powers, whether or not you are in Default: a) to execute all documents necessary to perfect, preserve or release our interest in the Collateral and b) to collect, receive and execute payments or other instruments related to insurance claims or losses and to apply such payments, at our sole discretion toward repayment of the obligations of this Agreement or replacement of the Collateral. This appointment shall remain in effect during the term of this Agreement and is a power coupled with an interest (which means you cannot cancel this power of attorney during this Agreement).

**PROTECTING THE COLLATERAL.** Unless the Owner is the only person who owns the Collateral, you represent that you own the Collateral or a part of it and that no one else, other than the Owner, has any interest in or claim against the Collateral that has not been disclosed to us in writing. Unless you have our written consent, you promise 1) not to sell, lease or give the Collateral to anyone else; 2) to keep the Collateral free from claims of others, whether or not justified (for example, forfeiture or seizure for alleged illegal acts; taxes; towing, storage or repair liens; fines; and security interests); 3) to keep the Collateral in good repair and keep it in your possession at one of your addresses indicated on page 1 of this Agreement; 4) not to take the Collateral outside the United States for more than 30 days; 5) to operate the Collateral in accord with all applicable statutes, rules and regulations; and 6) to use the Collateral only for personal, family or household purposes. If you fail to keep the Collateral free from claims of others or fail to keep the Collateral in good repair as required under this section, we may pay the claims or pay the cost to repair the Collateral (but we are not required to). When we ask you to, you will pay us the cost of any claims or repairs that we pay.

---

**INSURANCE ON COLLATERAL.**
**YOU MUST KEEP THE COLLATERAL INSURED.** You will keep the Collateral insured against physical damage and loss until you pay this loan in full. Collision and comprehensive or all-risk insurance would satisfy this requirement. You may buy the insurance from anyone you want, but the insurance company, the amount of insurance and the deductible, which may never exceed $1,000 unless we agree otherwise, must be acceptable to us. The policy shall name us as a secured party, provide for payment to us in case of loss and require written notice to us at least 10 days before cancellation or changes to coverage. You will give us a copy of the policy or give us other proof of the required insurance acceptable to us.
**COLLATERAL PROTECTION INSURANCE.** If you fail to keep the Collateral insured as required or fail to give us proof of the required insurance acceptable to us, we may, but we are not required to, buy Collateral Protection Insurance ("CPI") to protect our interest in the Collateral. The CPI may, but need not, also protect your interest. If you have not given us proof that the required insurance was in force as of the date of this loan, the effective date of the CPI can be as early as the date of this loan, even if the certificate of insurance for the CPI is not issued until later. If you have given us proof that the required insurance was effective as of the date of this loan, the effective date of the CPI can be as early as the date the required insurance expired or was cancelled, even if the certificate of insurance for the CPI is not issued until later.
**PAYMENT FOR CPI.** You are responsible for the cost of any CPI purchased by us. If we buy CPI, we may add the premium for the CPI to the unpaid balance of your loan and increase your monthly payment to pay the premium during the remaining term of the CPI; or we may require you to pay the full premium for the CPI immediately.
**CANCELLATION OF CPI.** If we buy CPI, you may still obtain the required insurance from the insurance company or agent of your choice. If you do this and give us proof of the required insurance acceptable to us, we will cancel the CPI as of the effective date of the insurance you obtain. If your account is paid off while the CPI is in effect, we will cancel the CPI as of the date your account is paid off. If we cancel the CPI, we will credit any refund of unearned insurance premium to your account. You will remain obligated to pay any earned insurance premium.
**IT IS BETTER FOR YOU TO GET YOUR OWN INSURANCE.** If we buy CPI, it will probably be more expensive and provide less insurance protection than insurance you could obtain from the insurance company or agent of your choice. The amount the CPI will pay may be less than the unpaid balance of your loan and may be less than the full value of the Collateral. We urge you to contact an insurance agent to assist you in evaluating your own insurance needs and to advise you whether other, less expensive, insurance is available.
**LIABILITY INSURANCE COVERAGE. Liability insurance coverage for bodily injury and property damage caused to others is not included in any CPI coverage we may obtain under this Agreement.**

---

**REPAIR OR REPLACEMENT OF COLLATERAL.** If any Collateral is damaged or lost, you will notify us immediately of the loss or damage. You will instruct any insurance company and anyone else liable for the damage or loss to pay any money as a result of the damage or loss (including but not limited to, insurance proceeds) to you and us jointly. Upon receipt, you agree to endorse any such payments and deliver them to us for collection. We may, at our option, either agree to use such payments for the repair or replacement of the Collateral or apply these payments to your debt under this Agreement. If we agree to use such funds for repair or replacement of the Collateral, we may release such funds to you or may hold such funds for payment directly to the vendor providing such services or selling the replacement collateral upon our satisfaction with such repair or replacement. You agree that we won't release any amount to you if you are in Default under this Agreement. If any amount is released to you, you agree that you must repair or replace the Collateral to our satisfaction and must sign any documents or do whatever else is necessary to give us a security interest in the repaired or replaced Collateral. You agree to repair or replace the property promptly.

**ADDITIONAL SIGNERS.** If there is more than one Borrower on this Agreement, each of you remain responsible for this loan even if we fail to notify you that there has been a Default. A Default by one of you will be a Default by all of you. You also agree to remain responsible if we change the terms of payment or release any Collateral without notifying you. If we release any of you from the loan, the rest of you will not be released. We do not have to use our legal remedies against any one of you before we use our legal remedies against any of the rest of you. An Owner has no personal responsibility for the payment of any amounts owed under this Agreement. If any Borrower or Owner dies or is discharged from liability under the United States Bankruptcy Code or similar law, you will still be liable for this loan. A court decree for divorce or separation or a non-court mutual agreement does not affect our ability to enforce this Agreement or collect the outstanding amount owing against all jointly liable parties if we were not a party to the decree or agreement.

Loan No:                                    Loan Date: 06/25/2008

**ADDITIONAL TERMS, Continued**

**GOVERNING LAW.** Unless prohibited by applicable law, this Note, as well as our rights and duties and your rights and duties regarding this Note, will be governed by and interpreted in accordance with the laws of the State of South Dakota and the United States and, to the extent required, to the laws of the state where the Collateral is located, regardless of where you may reside. You acknowledge this choice of law is made because Wells Fargo is a national banking association with its main office in South Dakota and to insure uniform procedures and interpretation for all of our customers no matter where they reside. You agree that if any term or provision of this Note is held to be unenforceable, void, illegal, or otherwise against applicable law, the other provisions shall survive and be enforceable separately from any voided provision.

**INFORMATION REPORTED TO CREDIT BUREAUS.** If you believe we have reported incorrect information about your account to a credit bureau, you may notify us by writing to us at Wells Fargo Auto Finance, P.O. Box 29704, Phoenix, AZ 85038-9704, Attn: Resolution Team. Please include your account number and a description of the information that is incorrect.

**DISPUTE RESOLUTION PROGRAM: ARBITRATION PROVISION.**

1. Non-Judicial Resolution of Disputes. If you have a dispute with us, and you and we (collectively, the "parties" and individually, a "party") are not able to resolve the dispute informally, the parties agree that any dispute, regardless of when it arose, shall be resolved by the following arbitration process. You understand and agree that each party is waiving the right to a jury trial or a trial before a judge in a public court. As an exception to this Arbitration Agreement, the parties retain the right to pursue in small claims court any dispute that is within that court's jurisdiction.

2. Disputes. A dispute is any unresolved disagreement between the parties. It includes, but is not limited to, any dispute relating in any way to the Agreement or related services or matters described in this Agreement. It includes claims based on broken promises or contracts, torts (injuries caused by negligent or intentional conduct) or other wrongful actions. It also includes statutory, common law and equitable claims. A dispute also includes any disagreement about the meaning of this Arbitration Agreement, and whether a disagreement is a "dispute" subject to binding arbitration as provided for in this Arbitration Provision. **Neither party shall be entitled to join or consolidate disputes by or against others in any arbitration, or to include in any arbitration any dispute as a representative or member of a class, or to act in any arbitration in the interest of the general public or in a private attorney general capacity. The parties agree that if the preceding sentence is held to be invalid, then the arbitration provision that governs the Note shall be null and void in its entirety.**

3. Binding Arbitration. Binding arbitration is a means of having an independent third person resolve a dispute without using the court system, judges or juries. Either party may require the submission of a dispute to binding arbitration at any reasonable time notwithstanding that a lawsuit or other proceeding has been commenced. If either party fails to submit to binding arbitration following a lawful demand, the one who fails to so submit bears all costs and expenses incurred by the other compelling arbitration. Each arbitration, including the selection of the arbitrator(s), shall be administered by the American Arbitration Association (AAA). The arbitration will be conducted pursuant to the rules of the AAA ("AAA Rules") which are in effect on the date a dispute is submitted to the AAA. Information about the American Arbitration Association, its rules, and its forms are available from the American Arbitration Association on the internet at http://www.adr.org or from the American Arbitration Association at 1633 Broadway, 10th Floor, New York, New York 10019. To the extent that there is any variance between the AAA Rules and this Arbitration Provision this Arbitration Provision shall control. The Arbitrator(s) must be members of the state bar where the arbitration is held, with expertise in the substantive laws applicable to the subject matter of the dispute. Either party may require that the arbitrator be a retired federal judge.

4. Federal Arbitration Act. The parties agree that in this relationship: (1) The parties are participating in transactions involving interstate commerce; and (2) Each arbitration is governed by the provisions of the Federal Arbitration Act (Title 9 of the United States Code), and, to the extent any provision of that Act is inapplicable, unenforceable or invalid, the laws of the state that govern the relationship between the parties about which the dispute arose.

5. Rights Preserved. This Arbitration Provision and the exercise of any of the rights the parties have under this Arbitration Provision does not stop either party from exercising any lawful rights to use other remedies available to preserve, foreclose or obtain possession of real or personal property; exercise self-help remedies, including setoff and repossession rights; or obtain provisional or ancillary remedies such as injunctive relief, attachment, garnishment or the appointment of a receiver by a court having jurisdiction.

6. Miscellaneous. The parties agree to take all steps and execute all documents necessary for the implementation of arbitration proceedings. The arbitrator may hear and rule on appropriate dispositive motions as part of the arbitration proceedings, such as motions for judgments on the pleadings, summary judgment or partial summary judgment. The parties must not disclose the existence, content or results of the arbitration, except for disclosures of information required in the ordinary course of business or permitted by applicable law or regulation. This provision shall be liberally construed in order to ensure the enforcement of this Arbitration Provision. Arbitration proceedings are conducted in the state in which you reside when you applied for the extension of credit or at a location determined by the AAA. All statutes of limitations applicable to any dispute apply to any arbitration between the parties. The provisions of this Arbitration Provision shall survive termination, amendment or expiration of this Agreement or any other relationship between the parties. This Arbitration Provision constitutes the entire agreement between the parties and supersedes all prior arrangements and other communications concerning dispute resolution. If more than one arbitration provision entered into by the parties is potentially applicable to the dispute, the one most directly related to the account or transaction that is the subject of the dispute shall control.

7. Fees and Expenses of Arbitration. If you start an arbitration proceeding, you agree to pay the initial filing fee required under the AAA Rules up to a maximum of $125. The AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees. We agree to pay for any part of the filing fee and any deposit required under the Rules in excess of $125. We also agree to pay the costs of the arbitration proceeding. If we start an arbitration proceeding, we will pay the filing fee, any deposit required under the rules and the costs of an arbitration proceeding. Each party shall be responsible for their own attorney, witness and expert fees and costs unless this Agreement (or applicable law) provides otherwise.

8. California Residents Only. In the event that you are a California resident, this Arbitration Provision shall apply only to disputes in which you seek to recover for yourself an amount of money, not including attorney fees and costs, that exceeds the jurisdictional dollar limit of the Small Claims Court.

Loan No:    Loan Date: 06/25/2008

JUN. 26. 2008 2:05AM    WELLS FARGO FINANCIAL5635837824    NO. 8326    P. 6

**ADDITIONAL TERMS, Continued**

**STATE LAW NOTICES.** Each of the following notices applies only to the residents of the state indicated:

**CALIFORNIA RESIDENTS**: A married applicant may apply for a separate account. We may also obtain information about you or the Collateral at any time from the California Department of Motor Vehicles. You agree to waive the address confidentiality requirements of Section 1808.21 of the California Vehicle Code.

**CALIFORNIA AND UTAH RESIDENTS**: As required by California and Utah law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

**LOUISIANA RESIDENTS: LOUISIANA LAW PERMITS REPOSSESSION OF MOTOR VEHICLES WITHOUT JUDICIAL PROCESS.**

**MISSOURI RESIDENTS**: ORAL LOAN AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR FORBEAR FROM ENFORCING REPAYMENT OF DEBT, INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT, ARE NOT ENFORCEABLE. TO PROTECT YOU (BORROWER(S)) AND US (CREDITOR) FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.

**OHIO RESIDENTS**: The Ohio laws against discrimination require that all creditors make credit equally available to all creditworthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

**RHODE ISLAND RESIDENTS: NONNEGOTIABLE CONSUMER NOTE**

**MARRIED WISCONSIN RESIDENTS**: Your signature confirms that this loan obligation is being incurred in the interest of your marriage or family. No provision of any marital property agreement (premarital agreement), unilateral statement under Section 766.59 of the Wisconsin Statutes or court decree under Section 766.70 adversely affects the interest of the lender unless the lender, prior to the time that the loan is approved, is furnished a copy of the marital property agreement, a statement, a decree or has actual knowledge of the adverse provision. If the loan for which you are applying is granted, your spouse will also receive notification that credit has been extended to you.

☐ If this box is checked, the following Notice applies:

**NOTICE**

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

| Internal Use Only | |
|---|---|
| Control Number: | 100000602242 |

Loan No:                                               Loan Date: 06/25/2008

# CERTIFICATE OF TITLE OF VEHICLE

| VEHICLE IDENTIFICATION NO | YEAR | MAKE | MODEL | BODY STYLE | TITLE NO |
|---|---|---|---|---|---|
| 1G1JH12F447124637 | 2004 | CHEVROLET | CAVALIER LS SPOR | COUPE | X8204021038 |
| 1G1JH12F447124637 | | | | | |

| DATE ISSUED | ODOMETER | CCM | PURCHASED | | PURCHASE DATE |
|---|---|---|---|---|---|
| 07/22/08 | 36000 | | NEW | | 10/14/03 |
| | 36000 | | | | |

MOBILE HOME SQ FT

TYPE OF TITLE
ORIGINAL

MAILING ADDRESS

WELLS FARGO BANK NA
PO BOX 250
ESSINGTON PA 19029-0250

LEGEND(S)

ACTUAL MILEAGE

OWNER(S) NAME AND ADDRESS
SUE A BIDDLE
9079 N BADGER RD
EAST DUBUQUE IL 61025

FIRST LIENHOLDER NAME AND ADDRESS
WELLS FARGO BANK NA
PO BOX 250
ESSINGTON PA 19029-0250
SECOND LIENHOLDER NAME AND ADDRESS

RELEASE OF LIEN
The Lienholder on the vehicle described in this Certificate does hereby state that the lien is released and discharged

By _____  _____ Date _____
Firm Name                    Signature of Authorized Agent

By _____  _____ Date _____
Firm Name                    Signature of Authorized Agent

NEW LIEN ASSIGNMENT: The information below must be on an application for title and presented to the Secretary of State
Secured Party.                                            Address

Federal and State law requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

ASSIGNMENT OF TITLE
The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage.
WARNING-ODOMETER DISCREPANCY.

"If this vehicle is one of more than 5 commercial vehicles owned by me, I certify also that the vehicle is not damaged in excess of 33 1/3% of its fair-market value unless this document is accompanied by a salvage application."

NO TENTHS
ODOMETER READING
Signature(s) of Seller(s) _____

Printed Name(s) of Seller(s) _____  DATE OF SALE _____
I am aware of the above odometer certification made by seller
Signature(s) of Buyer(s) _____  Printed Name _____

I, Jesse White, Secretary of State of the State of Illinois, do hereby certify that according to the records on file with my Office, the person or entity named hereon is the owner of the vehicle described hereon, which is subject to the above named liens and encumbrances, if any
IN WITNESS WHEREOF, I HAVE AFFIXED MY SIGNATURE AND THE GREAT SEAL OF THE STATE OF ILLINOIS, AT SPRINGFIELD.

CONTROL NO. G6612561

Jesse White
JESSE WHITE, Secretary of State

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.

---

MUST BE COMPLETED BY SELLER

DO NOT DETACH UNTIL SOLD
NOTICE OF SALE

SEE INSTRUCTIONS ON REVERSE

Vehicle Make _____  Vehicle Year _____  Vehicle Identification Number (VIN) _____  Date _____

Name of Seller (Current Registered Owner) _____  Name of Buyer _____

Complete Address of Seller _____  Complete Address of Buyer _____

City _____ State _____ ZIP _____  City _____ State _____ ZIP _____

Under penalties of perjury, I hereby certify that the foregoing is true and correct under the laws of the United States

Seller's Signature _____  Printed Name of Seller _____  Date _____